McKeon, EJ.
(dissenting). During the school year 2006-2007, plaintiffs daughter was enrolled as a student at defendant Harlem International Community School (the school), a private charter grammar school (as best as can be determined from the record), the principal of which was Wallie Simpson.
According to Ms. Simpson, plaintiffs daughter was a discipline problem who had been previously suspended from school for her disruptive comportment. Flaintiff denies this, and the trial court accepted plaintiffs version of events.
Both parties agree, however, that Ms. Simpson, as a form of punishment for a perceived school rule infraction, required plaintiffs daughter to write the words “I will not say shut up” 1,000 times. This disciplinary assignment apparently exacerbated an already acrimonious relationship between plaintiff and Ms. Simpson.
By her own testimony, plaintiff acknowledged that she sought to file harassment charges with police who, it seemed, went to the school to investigate. Soon thereafter, Ms. Simpson expelled the plaintiffs daughter for what she termed, “incorrigible behavior” and plaintiffs efforts to involve police in what was an ordinary grammar school disciplinary matter.
This small claims action followed in which plaintiff sought reimbursement for tuition paid for the school year. Relying on school regulations distributed to parents, the trial court held that plaintiffs daughter could only be expelled for violent behavior. Since no one suggests that she was guilty of such conduct, the trial court ruled that defendant breached its contract with plaintiff to educate her daughter and awarded damages of $1,500. I disagree.
The rules and regulations relied upon by plaintiff — and the trial court — were promulgated by the school to illustrate the varying degrees of punishment which “may” be imposed depending on the severity of a student’s disciplinary infraction. There is no legal basis to contend, as did the trial court, that *30 the rules or regulations constituted a binding contract between school and parent or, for that matter, school and student. Quite the contrary, “private schools are afforded broad discretion in conducting their programs, including decisions involving the discipline, suspension and expulsion of their students” (Hutcheson v Grace Lutheran School, 132 AD2d 599, 599 [1987]).
Hence, I cannot abide with the trial court’s conclusion that the school could only expel a student for violent behavior. What about chronic truancy, inappropriate sexual conduct on school property, habitual disrespectful conduct toward students and teachers — is the school without recourse to address such behavior merely because these activities are not expressly enumerated in its rules and regulations?
The trial court made much of Ms. Simpson’s inability at trial to produce written documentation of plaintiffs daughter’s past misconduct. However, this overlooks plaintiffs own testimony that she had stopped speaking to Ms. Simpson and that her mother (the student’s grandmother) was acting as de facto parent in dealing with the school. It requires no great leap to conclude that there was a “history” between plaintiff and the school.
A private school may expel a pupil when such action is in the best interest of the school, the child or other students (Hutcheson v Grace Lutheran School, 132 AD2d at 600).
For decades, parochial schools have disciplined students by requiring written assignments, either on paper or on a blackboard. Have school administrators or teachers, from time to time, been unfair in doling out such discipline? Perhaps. But that is hardly a reason to complain to police and require New York’s finest to travel to a grammar school to investigate a disciplinary assignment which required a child to write “I shall not say shut up” multiple times. Nor does it promote a healthy learning environment for a parent to file harassment charges with a government agency, as plaintiff sought to do here, because of her displeasure with a disciplinary code. Clearly, there is no claim that the school engaged in corporal punishment or criminal conduct. Rather, this is a situation where a student was a poor fit with a school, so much so that the orderly operation of the school was being disrupted by a parent’s actions.
Further, one gets the sense from reading the record that plaintiff and the trial court believe that Ms. Simpson and her school are archaic in the modes of discipline imposed upon the *31 students. Maybe they are right. However, the rules and regulations distributed to parents make abundantly clear that the school adheres to strict disciplinary standards. And a parent cannot be heard to complain that the rules do not provide a forewarning of what to expect. Some parents, for whatever reason, want a school which is committed to making good conduct a staple of the educational experience. That is their right.
So too, plaintiff had rights regarding her daughter’s education. But they did not include requiring a school to conform to plaintiffs thoughts of what constituted appropriate student discipline. If she considered the school too strict, plaintiff should have sent her child elsewhere, to a school which was in harmony with her philosophy on education.
Plaintiff got what she bargained for: an ultra-strict private school run by a no nonsense principal who is a strict disciplinarian. Defendant did not breach its contract with plaintiff; rather, it was plaintiff, by her extreme measures, who breached it with defendant.
Inasmuch as the judgment issued in plaintiffs favor did not achieve “substantial justice” consistent with substantive law principles (see CCA 1807), I respectfully dissent and vote to reverse and dismiss the action.
Schoenfeld and Heitler, JJ., concur; McKeon, EJ., dissents in a separate opinion.